Raphael Janove (SBN 361193)
raphael@janove.law
**JANOVE PLLC**
115 Broadway, 5th Fl.
New York, NY 10006
(646) 347-3940

*Counsel for Plaintiff & Proposed Classes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND TAYLOR, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>IROBOT CORPORATION,<br><br>Defendant. | Case No. 26-cv-6018<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, BUS. & PROF. CODE §§ 17500 & 17501 *et seq.*<br>2. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CIV. CODE § 1750 *et seq.*<br>3. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *et seq.*<br>4. BREACH OF CONTRACT<br>5. BREACH OF EXPRESS WARRANTY<br>6. BREACH OF IMPLIED WARRANTY<br>7. QUASI-CONTRACT/UNJUST ENRICHMENT<br>8. NEGLIGENT MISREPRESENTATION<br>9. INTENTIONAL MISREPRESENTATION<br>10. FRAUD<br><br>**DEMAND FOR JURY TRIAL** |

-1-

Plaintiff Raymond Taylor ("Plaintiff") individually and on behalf of all others similarly situated, brings this class action lawsuit against iRobot Corporation ("iRobot" or "Defendant") and alleges, upon personal knowledge as to their own actions and their counsel's investigation and upon information and good-faith belief as to all other matters, as follows:

## I.   INTRODUCTION

1.   iRobot sells and markets "Roomba" vacuums and cleaning appliances (the "Products") through the Roomba brand and on its website www.irobot.com (the "Website") and third-party websites.

2.   iRobot consistently advertises the Products on sale for purchase at a discounted price. In truth, the "sales" are perpetual, i.e. the Products are always sold at a purportedly discounted price, and never at the original reference prices.

3.   Through this false and deceptive marketing, advertising, and pricing scheme, Defendant has violated California law, which expressly prohibits falsely advertising goods on "sale" from fictitious former prices.

4.   The regular prices Defendant advertises are not actually Defendant's regular prices because the Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discounts the customer is receiving and are often not discounts at all.

5.   Accordingly, Plaintiff brings this case individually and on behalf of the other customers who purchased Defendant's Products.

## II.   PARTIES

6.   Plaintiff Raymond Taylor is, and was at all relevant times, domiciled in California. On December 4, 2025, Plaintiff purchased a "Roomba 105 Vac Robot + AutoEmpty Dock" that was marketed with a reference price of $449.99 but with a discounted sale price as a "limited time offer." Plaintiff viewed and reasonably relied on Defendant's false advertisements about supposed discounts and limited-time

CLASS ACTION COMPLAINT

sales, and would not have purchased the item or would have paid less for the item had they known about the deceptive advertising.

7.     Defendant iRobot Corporation is a Delaware corporation headquartered in Bedford, Massachusetts.

## III.   JURISDICTION AND VENUE

8.     The exercise of federal subject matter jurisdiction is also appropriate pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) there are more than 100 members of the Class, (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iv) none of the exceptions apply to this action.

9.     This Court has personal jurisdiction over Defendant because it conducts business in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the judicial district.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

## IV.   FACTUAL ALLEGATIONS

### A.     DEFENDANT'S FAKE PRICES AND FAKE DISCOUNTS.

11.     Defendant manufactures, distributes, markets, and sells the Products.

12.     Defendant creates the false impression that its Products' regular prices are higher than they truly are.

13.     On the Website, Defendant consistently promotes its Products as being offered at steep discounts from advertised "regular" prices.

-3-

CLASS ACTION COMPLAINT

14. Defendant employs strike-through pricing: next to the supposed sale price at a discount, the original, higher price—known as the "reference price"—is shown but is struck through with a line (e.g., $449.99).

15. Defendant also uses language such as "Special Offers" and states how much customers supposedly "Save" when they purchase a "Limited Time Offer." And in some instances, the Company advertises that customers are supposedly receiving "Early Black Friday" or "Holiday Savings," even when the same discounts existed before and after the holidays. These cues are designed to create a false sense of urgency and pressure consumers to purchase before the supposed sale ends or inventory runs out.

16. Defendant thus intentionally creates the false and misleading impression that its Products are normally sold at a higher price, but are available for a discount for a limited time only. For instance, the Roomba® 105 Vac Robot + AutoEmpty™ Dock, which Plaintiff purchased, has been advertised consistently with a "Limited Time Offer" on discount from the struck-through reference price of $449.99, as illustrated by the following Internet Archive screenshots from June 2025 through the present:



*June 1, 2025*

CLASS ACTION COMPLAINT



*July 2, 2025*



*August 8, 2025*

CLASS ACTION COMPLAINT



*September 22, 2025*

*October 1, 2025*

CLASS ACTION COMPLAINT



*November 10, 2025*

*December 15, 2025*

CLASS ACTION COMPLAINT



*January 2, 2026*



*February 13, 2026*

CLASS ACTION COMPLAINT



*March 5, 2026*

17.    As of the date of this filing, the Product is still advertised on a heavy discount from the $449.99 reference price:



-9-

18. Defendant's other Products are also consistently advertised with "limited time" sales, with discounted prices appearing next to the original reference prices. For instance, the Roomba® Max 705 Combo robot + AutoWash™ dock is regularly sold at a "discount" from the $1,299.99 original price. The Roomba® Max 705 Vac robot + AutoEmpty™ dock is regularly sold at a "discount" from the $899.99 original price.



19. The Roomba 205 DustCompactor™ Combo Robot is also regularly sold at discount from the struck-through $469.99 regular price, a "sale" marketed as a "Limited Time Offer."

-10-



20.     These claims about supposed sales are deceptive and misleading to the reasonable consumer. Because Defendant consistently sells its Products at the same "discounted" price, that price is, in fact, the regular price. Defendant thus deceives consumers into thinking they are receiving a "deal" on a high-value product, inducing them to purchase Products at prices they would not otherwise pay.

21.     Defendant also uses several third-party retail platforms to carry out its deceptive scheme. For instance, on Target, Amazon and BestBuy.com, Defendant

-11-

CLASS ACTION COMPLAINT

advertises its Products on discount. For instance, these third-party retailer sites advertise the iRobot Roomba Max 705 Combo Robot Vacuum & Mop + AutoWash Dock – Extending Cleaning Roller Mop on sale from the $1,299.99 original reference price for the discounted price of only $799.00.



*Amazon Product Page (June 2, 2026)*

22.    Thus, any third-party sales do not establish that Defendant's reference prices are the prevailing market prices. Rather, third-party sales confirm that the supposed "discounted" prices are what the Products normally sell for, not the original reference prices.

23.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the purported regular prices Defendant advertises are Defendant's former prices—the price at which the goods were actually offered for sale before the limited-time offer went into effect.

24.    In other words, reasonable consumers reasonably believe that, prior to the purportedly time-limited sale, consumers had to pay the "regular" price to get the Products and did not have the opportunity to get a discount from that "regular" price.

-12-

CLASS ACTION COMPLAINT

25. Reasonable consumers also reasonably believe that the regular prices Defendant advertises represent the true market value of the Products and are the prevailing prices for those Products.

26. Reasonable consumers also reasonably believe that they are receiving reductions from those purported regular prices in the amounts represented.

27. In truth, however, Defendant persistently offers discounts from the purportedly "regular" prices it advertises.

28. As a result, everything about Defendant's price and purported discount advertising is false.

29. The regular prices Defendant advertises are not Defendant's actual regular or former prices, do not reflect the prevailing prices for the Products, and do not represent the Products' true market value.

30. Defendant's Products are consistently available for less than the purported regular prices, and customers did not have to pay the purported regular prices amount to purchase those items.

31. The purported discounts Defendant advertises are not the actual discount the customer is receiving and are often not a discount at all.

32. Further, Defendant's purported discounts are not limited in time or expiring soon. Quite the opposite, they are consistently available.

**B.   DEFENDANT'S ADVERTISEMENTS HARM CONSUMERS.**

33. Defendant knows that its fake sales increase revenue because listed sale prices influence purchase decisions.

34. Fake sales, especially those using false "regular" prices, can powerfully influence purchasing decisions, with higher "regular" prices leading to higher sale prices.[1]

---

[1] *E.g.*, Staelin, Urbany, & Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. OF MKTG. 1-21 (2023); Amstrong & Chen, Discount Pricing, 58 ECON. INQUIRY 1614-27 (2020).

CLASS ACTION COMPLAINT

35.    Based on Defendant's marketing, reasonable consumers would expect that the advertised regular prices reflect the prices at which Defendant ordinarily and customarily sells its Products—that is, the former prices at which the Products were sold before the introduction of the time-limited discount.

36.    Reasonable consumers would further expect that, by purchasing during the sale, they are obtaining a Product whose regular price and market value correspond to the advertised reference price, and that they are receiving the advertised discount from that price.

37.    Moreover, consumers are more likely to purchase a Product when they believe it is on sale and that they are obtaining an item of higher regular price and market value at a substantial discount from what they would otherwise pay. Reasonable consumers are drawn to a sale.

38.    Consumers presented with discounted prices are substantially more likely to complete a purchase. Research consistently shows that two out of three shoppers actively seek discounts, special offers, or more competitively priced items when making purchasing decisions.[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

39.    As one prominent study from the Harvard Business School summarized, laboratory experiments and observational data indicate that false discounts are "a

---

[2] *Consumer Behavior Trends: 40 Stats for Retail Success* (2026) *available at* https://www.intelligencenode.com/blog/consumer-behavior-buying-trends-2024/.

[3] *E.g., RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers* (2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html, archived at https://perma.cc/34N6-N8SZ

-14-

CLASS ACTION COMPLAINT

powerful tool to enhance demand" and have a particularly strong influence on "less-informed consumers."[4]

40.    These findings are reinforced by an FTC Staff Report titled Bringing Dark Patterns to Light, published September 1, 2022. According to the FTC, false discounts and false limited-time messages create a "false belief"—specifically, an illusion of urgency, putting undue pressures on customers to "buy immediately[.]"[5]

41.    The effect is compounded when consumers believe a discounted price is available only for a limited time. Research has found that limited-time notices create a sense of urgency and heighten the perceived desirability of a product, leading to increased purchase intention.[6] Limited-time discounts impose a deadline on a sale or deal, forcing consumers to decide under time pressure, accelerating their purchase decision-making, and increasing purchase likelihood.[7] Indeed, when consumers are exposed to time-sensitive offers, they tend to perceive those offers as more valuable and credible—precisely the effect that fictitious expiration dates are designed to manufacture.[8]

---

[4] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail*, Harvard Business School Working Paper (2018), *available at* www.hbs.edu/ris/Publication%20Files/18-113_16977967- 84c0-488d-96e5-ffba637617d9.pdf.

[5] FTC Staff Report, *Bringing Dark Patterns to Light* at 4, 25 (2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns% 20Report%209.14.2022%20-%20FINAL.pdf.

[6] Broeder et al., *Limited-time scarcity and competitive arousal in E-commerce. The International Review of Retail, Distribution and Consumer Research*, *32(5),* 549–567 (2022*), available at* https://doi.org/10.1080/09593969.2022.2098360.

[7] Tiemessen et al., *The Time is Ticking: The Effect of Limited Time Discounts on Consumers' Buying Behavior and Experience* (2023) *available at* https://gunesacar.net/assets/CHI-EA-23-Time-is-Ticking-Deceptive-Countdown-Timers.pdf.

[8] Suvarna et al., *The Effect of Limited-Time Discounts On Consumer Urgency and Purchase Behavior* (2025) *available at* https://eprajournals.com/pdf/fm/jpanel/upload/2025/June/202506-01-022750.

CLASS ACTION COMPLAINT

42. Defendant's false advertising thus harms consumers in two related ways. First, it induces consumers to make purchases they would not otherwise have made, or would not have made when they did, by presenting fictitious discounts and artificial urgency as genuine. Second, by artificially stimulating consumer demand through these misrepresentations, Defendant is able to command a price premium for its Products that the market would not otherwise support. The prices Plaintiff and the Class paid were therefore inflated by Defendant's misrepresentations—absent those misrepresentations, Defendant could not have charged, and Plaintiff and the Class would not have paid, the prices they did.

## C. DEFENDANT BREACHED ITS CONTRACT.

43. When Plaintiff purchased Products as described herein, they accepted offers made by Defendant, forming binding contracts at the moment of purchase. The terms of that offer included a representation that the Products had the listed regular price and corresponding market value advertised on the Website, and a promise to provide that Product at the discounted price advertised at the time of purchase.

44. By advertising specific regular prices and corresponding discounted prices, Defendant represented that the value of the Products it was providing were equal to the advertised regular price, and agreed to provide Plaintiff those Products at a discount equal to the difference between the advertised regular price and the price Plaintiff actually paid.

45. The regular price and market value of the items Plaintiff would receive, along with the discount amount off of the regular price of those items, were specific and material terms of the contract.

46. Plaintiff performed their obligations under the contracts by paying for the items they purchased.

47. Defendant breached its contracts by failing to provide Plaintiff with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

-16-

## V.   CLASS ALLEGATIONS

48.   Plaintiff brings this proposed class action lawsuit pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) individually and on behalf of a Class (the "Class") and a California Subclass (the "California Subclass"; together with the Class, the "Classes") of all others similarly situated, defined as follows:

a.   **Nationwide Class**: All persons who, within the applicable statute of limitations period, purchased one or more Products advertised at a discount.

b.   **California Subclass**: All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Products advertised at a discount.

49.   Excluded from the Classes are: (i) any Judge or Magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

50.   **Numerosity**: The exact number of members of the Classes is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant has many thousands of customers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

51.   **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiff and the alleged Classes, and those questions predominate over any questions that may affect individual members of the Classes.

Common questions for the members of the Classes include, but are not necessarily limited to the following:

    a.    whether Defendant made false or misleading statements of fact in its advertisements;

    b.    whether Defendant violated California's consumer protection statutes;

    c.    whether Defendant committed a breach of contract;

    d.    whether Defendant committed a breach of an express or implied warranty;

    e.    damages needed to reasonably compensate Plaintiff and the proposed Classes.

52.    **Typicality**: Plaintiff's claims are typical of the proposed Classes. Like the proposed Classes, Plaintiff purchased the Products advertised at a discount from Defendant. There are no conflicts of interest between Plaintiff and the Classes.

53.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Classes. That is, Plaintiff and the members of the Classes sustained injuries and damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor their counsel have any conflicts with or interests adverse to the Classes.

54.    **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Classes is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense

-18-

to all parties due to the complex legal and factual controversies presented in this Complaint as well as the risk of inconsistent adjudication. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Through a class action, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

55.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA'S FALSE ADVERTISING LAW
### Bus. & Prof. Code §§ 17500 & 17501, *et seq.*
### (*On Behalf of Plaintiff & the California Subclass*)

56.     Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

58.     Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

59.     Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Subclass members.

60.     As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (e.g., $1,299) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as "regular" prices from which time-limited

discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

61.    The prices advertised by Defendant are not Defendant's "regular" prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the product in question), because there is always an ongoing promotion that entitles consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are "limited time" and only "valid" for a certain time period are false and misleading too.

62.    In addition, Defendant has violated, and continues to violate, Section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised "regular" prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

63.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

64.    In addition, Subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

-20-

CLASS ACTION COMPLAINT

65.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Subclass.

66.    Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known the truth, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750, *et seq.*
### (*On Behalf of Plaintiff & the California Subclass*)

67.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

68.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass.

69.    Plaintiff and the Subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

70.    Plaintiff and the Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

71.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

72.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to Subclass members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

73.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

-21-

CLASS ACTION COMPLAINT

74. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

75. Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code. Defendant violates this by misrepresenting that the Products are of a particular standard, quality or grade.

76. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

77. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (e.g., a "Holiday sale," when in fact the "sale" is ongoing and not limited to the holiday).

78. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

79. In addition, Subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

80. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Subclass.

CLASS ACTION COMPLAINT

81.     Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

82.     On April 14, 2026, a CLRA demand letter was sent to Defendant's registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant did not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt.

83.     Accordingly, pursuant to California Civil Code § 1780(a)(1), Plaintiff, individually and on behalf of all other members of the California Subclass, seeks actual damages. Pursuant to California Civil Code § 1780(a)(2), Plaintiff, individually and on behalf of all other members of the California Subclass, seeks injunctive relief. Pursuant to California Civil Code § 1780(a)(4), Plaintiff, individually and on behalf of all other members of the California Subclass, seeks punitive damages.

84.     Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Products no market value, whereas that showing is not required for restitution.

85.     Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market its Products. Injunctive relief is appropriate because Defendant continues to deceptively market its Products as "on

-23-

CLASS ACTION COMPLAINT

sale" and continues to claim that those sales represent limited-time or seasonal offers. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved only through available legal remedies.

86. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if they could feel sure that Defendant's "regular" prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's "regular" prices, discounts, and sales are not false or deceptive. Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

87. **Permanent public injunctive relief**. Plaintiff, acting as private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein

### THIRD CAUSE OF ACTION

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
***(On Behalf of Plaintiff & the California Subclass)***

88. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

90. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

-24-

91.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, § 233.2.

92.     16 C.F.R.§ 233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

93.     As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false, misleading, and "deceptive."

-25-

CLASS ACTION COMPLAINT

94. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

95. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

96. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

97. Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

98. The harm to Plaintiff and the Subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading advertising of consumer products only injures healthy competition and harm consumers.

99. Plaintiff and the Subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

100. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

101. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

-26-

CLASS ACTION COMPLAINT

102.   In addition, Subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Products.

103.   Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Subclass members.

104.   Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

105.   Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if they could feel sure that Defendant's "regular" prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's "regular" prices, discounts, and sales are not false or deceptive. Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

106.   **Permanent public injunctive relief**. Plaintiff, acting as private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### FOURTH CAUSE OF ACTION

**BREACH OF CONTRACT**
***(On Behalf of Plaintiff & the Nationwide Class)***

107.   Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

-27-

108. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant. In the alternative, Plaintiff brings this cause of action individually and on behalf of the California Subclass.

109. Plaintiff and Class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's Website.

110. The contracts provided that Plaintiff and Class members would pay Defendant for the Products purchased.

111. The contracts further required that Defendant provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and Class members with a discount equal to the difference between the price paid, and the regular prices advertised. These were specific and material terms of the contract.

112. The specific discounts were a specific and material term of each contract.

113. Plaintiff and Class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

114. Defendant breached its contracts with Plaintiff and Class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market value equal to the regular price displayed on the Website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

115. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

-28-

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (*On Behalf of Plaintiff & the California Subclass*)

116. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

117. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

118. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on the Website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

119. This warranty was part of the basis of the bargain and Plaintiff and members of the Subclass relied on this warranty. In fact, the Product's stated market value was not the prevailing market value. Thus, the warranty was breached.

120. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on April 14, 2026.

121. Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

## SIXTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY
### (*On behalf of Plaintiff & the California Subclass*)

122. Plaintiff and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

-29-

CLASS ACTION COMPLAINT

123. Plaintiff brings this cause of action individually and on behalf of members of the California Subclass.

124. As described in greater detail above, Defendant impliedly warranted that the Products had a market value equal to the regular price displayed on Defendant's Website.

125. This warranty was part of the basis of the bargain and Plaintiff and members of the Subclass relied on this warranty.

126. In fact, the Products did not have a market value equal to the regular price displayed. Thus, the warranty was breached. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on April 14, 2026.

127. Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known the truth, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

## SEVENTH CAUSE OF ACTION

### QUASI CONTRACT/UNJUST ENRICHMENT
### (*On behalf of Plaintiff & the Nationwide Class*)

128. Plaintiff and the Nationwide Subclass members incorporate the foregoing allegations as if fully set forth herein.

129. Plaintiff brings this cause of action individually and on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim individually and on behalf of the California Subclass.

130. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase Products and to pay a price premium for these Products.

CLASS ACTION COMPLAINT

131. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

132. Plaintiff and the Class seek restitution.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff & the California Subclass)

133. Plaintiff and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

134. Plaintiff brings this cause of action individually and on behalf of the California Subclass.

135. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Subclass members concerning the existence and/or nature of the discounts and savings advertised.

136. These representations were false.

137. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

138. Defendant intended that Plaintiff and Subclass members rely on these representations and Plaintiff and Subclass members read and reasonably relied on them.

139. In addition, Subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

140. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

141. Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the

-31-

Products because the Products were sold at a price premium due to the misrepresentation.

## NINTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION
### (On behalf of Plaintiff & the California Subclass)

142.    Plaintiff and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

143.    Plaintiff brings this cause of action individually and on behalf of the California Subclass.

144.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Subclass members concerning the existence and/or nature of the discounts and savings advertised.

145.    These representations were false.

146.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

147.    Defendant intended that Plaintiff and Subclass members rely on these representations and Plaintiff and Subclass members read and reasonably relied on them.

148.    In addition, Subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

149.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

150.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the

-32-

Products because the Products were sold at a price premium due to the misrepresentation.

### TENTH CAUSE OF ACTION

### FRAUD
### (*On behalf of Plaintiff & the Nationwide Class*)

151. Plaintiff and the Class members incorporate the foregoing allegations as if fully set forth herein.

152. Plaintiff brings this cause of action individually and on behalf of the Nationwide Class.

153. As alleged in detail above, Defendant, through its website and online retailers, like Amazon, represented that its Products were "on sale" as part of purported limited time or seasonal discounts—and prominently displayed purported sale prices and false reference prices for each of its Products.

154. Defendant did not disclose the truth on any platform, i.e., that its Products were not actually "on sale" and that purported sale prices were, in fact, the item's ordinary, market price.

155. Defendant made these misrepresentations and omissions intending to deceive Plaintiff and members of the Nationwide Class into purchasing the Products at their fake sale price.

156. When Defendant advertised sales, promoted specific sale prices and listed purported reference prices, it knew those representations were false and misleading. Defendant knew its Products were not being sold for a discount but, rather, at their ordinary, market price.

157. The misrepresentations and omissions were also material because the price of the Products and the existence of any discount on them are important factors to a reasonable consumer.

158. Defendant's fraudulent misrepresentations and omissions directly and proximately caused injury in fact and actual damage to Plaintiff and members of the Nationwide Class. Absent Defendant's misrepresentations and omissions, Plaintiff

-33-

and the Class members would not have purchased the Products or would have paid substantially less for them.

159.  Plaintiff, individually and on behalf of the Nationwide Class, seeks compensatory and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Classes, and grant the following relief:

    a.    For an order certifying the Classes and naming Plaintiff as the representative of the putative Classes and Plaintiff's attorneys as Class Counsel to represent the putative Class members;

    b.    For an order declaring that the Defendant's conduct violates the statutes and laws referenced herein;

    c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

    d.    For damages, treble damages, and punitive damages where applicable in an amount to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For injunctive relief, restitution, and disgorgement, as pleaded or as the Court may deem proper;

    g.    For an order awarding Plaintiff and the putative Classes their reasonable attorneys' fees and expenses and cost of suit; and

    h.    Any additional relief that the Court deems reasonable and just.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

CLASS ACTION COMPLAINT

Dated: June 3, 2026                Respectfully submitted,

By: /s/ *Raphael Janove*
        Raphael Janove

Raphael Janove (SBN 361193)
**JANOVE PLLC**
115 Broadway, 5th Fl.
New York, NY 10006
(646) 347-3940
raphael@janove.law

*Counsel for Plaintiff & the Proposed Classes*

-35-

CLASS ACTION COMPLAINT

I, Raymond Taylor, declare:

1.  I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.  I submit this Declaration pursuant to California Code of Civil Procedure § 2015.5 and California Civil Code § 1780(d).

3.  As set forth in my complaint, I purchased Defendant iRobot Corporation's "Roomba® 105 Vac Robot + AutoEmpty™ Dock."

4.  The Central District of California is the proper place for the trial of this action because the transaction, or a substantial portion thereof, occurred in Los Angeles County.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

06/03/26
_____
Date

_____
Raymond Taylor